UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

METRO RIVERBOAT ASSOCIATES,   *        CIVIL ACTION
INC.

VERSUS                        *        NO: 05-3109

UNITED STATES OF AMERICA,     *        SECTION: "D"(1)
INC. AND BELLE OF ORLEANS,
L.L.C.

## ORDER AND REASONS

Before the court are the following motions:

(1)  **"Motion to Dismiss and/or for Summary Judgment"** filed by

Defendant, the United States of America; and

(2)  **"Motion for Summary Judgment"** filed by Defendants,

Bally's Louisiana, Inc. (BLI) and Belle of Orleans,

L.L.C. (Belle).

Plaintiff, Metro Riverboat Associates, Inc. (Metro), opposes

both motions.  The motions, set for hearing on Wednesday, August

30, 2006, are before the court on briefs, without oral argument.

Now, having considered the memoranda of counsel, the record, and

the applicable law, the court rules.

## I.  Background

Belle was a Louisiana limited liability company, and was the licensee, owner and operator of a Louisiana riverboat casino, known as the Bally's Casino Lakeshore Resort (Bally's Casino).  Until February 26, 2003, the sole owners and members of Belle were BLI and Metro, with BLI having a 49.9% interest in Belle and Metro having a 50.1% interest; further, BLI was designated as the "tax matters partner."  (*See* §5.08 of the Belle Operating Agreement attached to Ex. B of Bally's and Belle's Memo., Doc. No. 61-1).

On or about September 13, 2002, Belle filed its "U.S. Return of Partnership Income" (Form 1065) for 2001, which forms the basis of this lawsuit.[1]  (*See* Belle's Form 1065 for 2001, Memo Exhibit D, attached to Metro's Opp., Doc. No. 74)  On this return, both Metro and BLI were shown to be "C" corporations.  (*Id.*).

---

[1]     Pursuant to 26 U.S.C. §701,

> A partnership as such shall not be subject to the income tax imposed by this chapter.  Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

26 U.S.C. §701.

     Citing this provision, the Government represents that: "Partnerships are not subject to federal income taxes, although they file annual information returns, Forms 1065."  (*See* Gov.'s Memo., Doc. 35-2, p. 1).

### ***Metro's election to be a "S" corporation***[2]

On March 15, 2001, counsel for Metro purportedly filed Form 2553, "Election by a Small Corporation," on which Metro elected to be an "S" corporation.[3] (*See* Gambel Affidavit and Ex. D, attached to Metro's Opp. to the Gov.'s Motion to Dismiss/Motion for Summary Judgment).

Metro's counsel represents in an Affidavit dated June 27, 2006 that:

> 5.    The [S] election was not entered into the IRS ENMOD system until March 11, 2002, and entered effective for Tax Years beginning January 1, 2002, not 2001, as is shown by copy of transaction for ENMOD 72-1236436 run on 9/16/03, which your affiant obtained from Revenue Agent Bacino on or about 9/23/03, attached hereto as Exhibit E.
>
> 6.    Upon learning of the error and the belated entry of the S Chapter filing, Metro applied for "Corrective Action under Revenue procedure 2003-43 and Rev.Proc. 97 48 filed pursuant to Rev.Proc. 2003-43" as is made to appear by the September 24, 2004 letter to the Internal revenue Service Center in Ogden, Utah, attached hereto as Exhibit F.

---

[2]    As discussed in the "Legal Analysis" section of this opinion, the classification of Metro as either a "C" corporation or "S" corporation is important in the determination of whether or not Belle is a small partnership exempt from the provisions of the Unified Audit and Litigation Procedures of IRC §§6221-33 (TEFRA).

[3]    Metro advises that "Metro and its sole shareholder were being audited by the IRS-New Orleans at the time." (Metro's Opp., Doc. No. 74, pp. 1-2).

> 7.   On September 24, 2004, your affiant asked the Taxpayer Advocate Office to intercede on Metro's behalf calling to the Advocate's attention the fact that ENMOD 72-1236436, as is made to appear from Exhibit F, the election was not entered into the system until March 11, 2002, and entered effective for Tax year Beginning January 1, 2002, not 2001. See said letter of September 24, 2004, attached hereto as Exhibit G.

(*See* Gambel Affidavit with exhibits, attached to Metro's Opp., Doc. No. 52).

On or about October 25, 2004, Metro filed an amended return on Form 1120S, "U.S. Income Return for an S Corporation" for the 2001 taxable year, and purportedly attached Form 8082, "Notice of Inconsistent Treatment or Administrative Request (AAR). (*See* Memo Exhibit I, attached to Metro's Opp., Doc. No. 74).[4]

In a letter dated January 4, 2005, the IRS notified Metro that:

> We accept your election to be treated as an S corporation with an accounting period of Dec. 31, 2001, beginning Jan. 01, 2001.  Please keep this letter in your permanent records as proof of acceptance of your election.

---

[4]   Metro had filed its original return for 2001 on or about September 10, 2002, on Form 1120-A, "U.S. Corporation Short-Form Income Tax Return." (Government Exhibit 33).  The Government represents that this "original return reported no losses as being allocated to it from Belle for the tax year 2001" and "[a] Form 1120-A is the type of return filed by a C corporation, and not an S corporation."  (Gov.'s Memo., Doc. No. 58-1, pp. 4-5).

(*See* Gambel Affidavit and attached Ex. H, attached to Metro's Opp.,
Doc. No. 52).[5]

### *Settlement Agreement*

On February 26, 2003, Metro and BLI executed (among other
parties) a "Settlement, Transfer, and Release Agreement"
(Agreement), in which Metro sold its rights, titles and interests
in the Belle to BLI. (*See* Settlement Agreement attached as Exhibit
A to the Motion for Summary Judgment, Doc. No. 12, filed by BLI and
Belle).   Further, as stated in this Agreement, Metro

> hereby release[s], relieve[s], acquit[s], and
> forever discharge[s] ... BLI ... and their
> respective present and former affiliated,
> related, parent, and subsidiary companies and
> entities, agents, attorneys, employees,
> partners, shareholders, directors, officers,
> insurers, heirs, administrators, executors,
> representatives, predecessors, successors,
> assigns, and any and all other persons and
> entities having anything to do with any of the
> foregoing companies, entities, and persons
> (hereinafter referred to collectively as the
> "Parties Released by Metro..."), from any and
> all obligations, claims, demands, liabilities,
> costs, losses, expenses, damages, actions,
> causes of action, lawsuits, and judgments of
> any and every kind, whether known or unknown,
> contingent or absolute, liquidated or
> unliquidated, anticipated or unanticipated,

---

[5]     The Government argues that there is no credible evidence that
Metro timely filed for an "S" election, and if Metro had made a timely
election for 2001, as Metro's counsel claims he did on March 15, 2001, then
Metro would have filed its original return on a Form 1120S.  Notwithstanding
such arguments, it is undisputed that in its letter dated January 4, 2005, the
IRS did accept Metro's election to be treated as an S corporation beginning
January 1, 2001.  (Metro's Memo. Exhibit H, attached to Doc. No. 74).

asserted or unasserted, in any way relating to
or arising out of (a) the Belle, (b) Bally's
casino, (c) the Operating Agreement, (d) the
Management Agreement, (e) the Consulting
Agreement, (f) Other Belle/Bally's Casino
Agreements, (g) the Metro... Litigation, ...,
(k) any and all prior litigation concerning
the Belle and/or the Bally's Casino in which
any of the Parties was a party, ..., (n)
Metro's ... acquisition of, involvement with,
and interests in the belle and the bally's
Casino, ..., and (p) any and all aspects of
the foregoing (hereinafter referred to
collectively as the "Matters Covered by the
Metro... Release"). The foregoing releases
include, but are not limited to, any and all
obligations, claims, demands, liabilities,
costs, losses, expenses, damages, actions,
causes of action, lawsuits, and judgments of
any and every kind that Metro ... do not know
of or suspect to exist, which if known by
Metro ... might have affected [its] decision
to enter into this Agreement, and this
Agreement and all transactions and matters
covered by this Agreement will be unaffected
and undiminished by Metro's ... subsequent
discovery of any fact or circumstance
presently unknown to Metro ..., and all
provisions of law and/or of this Agreement to
the contrary notwithstanding. Metro ...
acknowledge[s] that [it] may discover facts in
addition to or different from those that [it]
now knows or believes to be true with respect
to the subject matter of this Agreement, but
it is the intention of ... Metro ... to fully,
finally, and forever settle and release the
parties released by Metro..., irrespective of
what Metro ... know[s], [does] not know,
believe, or [does] not believe at this time.

(*See* Agreement, ¶5, pp. 15-16).

Section 11 of the Agreement further provides:

Except to enforce the terms of this Agreement,

> in accordance with Section 21 below, the Parties to this Agreement will not initiate any action contrary to the interests of any other party to this Agreement or any Party's affiliates or representatives before any court or governmental agency, but all Parties and their respective affiliates and representatives shall comply with all court orders and other requirements by governmental agencies and authorities.

(*Id.* at ¶11, pp. 21-22).[6]

Notwithstanding the limitations on legal action, the Agreement provides:

> This Agreement may be pleaded or asserted by or behalf of any party and on behalf of all other persons and entities referred to or mentioned in this Agreement ... **as a defense and complete bar to any action, claim, cause of action, demand, or proceeding** that hereafter may be filed against or involve any person or entity referred to or mentioned in this Agreement with respect to the Transfer and the other matters and transactions settled in this matter.

(*Id.* at ¶16, p. 24)(emphasis added).[7]

---

[6]      Section 21 of the Agreement provides:

Prior to any party filing a lawsuit concerning any dispute, controversy, or claim in any way relating to or arising out of this Agreement, the Parties to any such dispute, controversy, or claim should first make a good-faith effort to resolve said dispute, controversy, or claim through non-binding mediation ... Any lawsuit filed prior to the completion of such mediation shall be premature....

(*Id.* at ¶21, pp. 26-27).

[7]      Belle and BLI have filed a counterclaim against Metro and a third-party demand against Norbert Simmons based on the Settlement Agreement. (*See* Docs. Nos. 71 & 72).

### *Recision of Operating Agreement*

**O**n February 26, 2003 (the same day the Settlement Agreement was executed), Metro also executed a document terminating the operating agreement of the Belle.   The termination agreement provides in pertinent part:

> Metro, Simmons, and BLI each hereby releases the other parties to this Termination Agreement from any and all obligations, claims, demands, liabilities, costs, losses, expenses, damages, actions, causes of actions, lawsuits, and judgments of any kind, whether known or unknown, contingent or absolute, liquidated or unliquidated, anticipated or unanticipated, asserted or unasserted, in any way relating to or arising out of the Operating Agreement and/or the amendment.

(*See* "Termination of Operating Agreement of Belle of Orleans, L.L.C.," attached as Exhibit A to Declaration of Barry E. Cummins, attached to Bally's and Belle's Memo., Doc. No. 61-1).

### *IRS Proceedings*

On or about November 25, 2003, the Internal Revenue Service sent Belle a "Notice of Beginning of Administrative Proceeding" (NBAP, Form 1787(DO)).   (*See* NBAP, Memo Exhibit C, attached to Metro's Opp., Doc. No. 74).[8]   The Government represents (without competent summary judgment evidence) that the IRS subsequently

---

[8]      As discussed below, the "Notice of Beginning of Administrative Proceeding" signifies that the IRS is beginning an examination of partnership items under the Unified Audit and Litigation Procedures (TEFRA). 26 U.S.C. §§6221-33.

8

voided the NBAP after determining that this was not a TEFRA case.[9] In any event, Metro accepts the IRS' characterization that the issuance of the NBAP was a mistake. (*See* Metro's Opp., Doc. No. 74, n. 5).

Metro was unaware of the NBAP when it was issued. However, on or about April 26, 2004, (after apparently voiding the NBAP) the IRS sent Metro a "Notification of Beginning of Partnership Audit," in which the IRS advised Metro that it was beginning an examination of Belle's partnership return for the 2001 tax year. (Memo Exhibit F, attached to Metro's Opp., Doc. No. 74). In a letter dated October 12, 2004, the Government advised Metro's counsel that Metro was being processed under Non-TEFRA proceedings; that under non-TEFRA proceedings each investor in a partnership is treated individually; and that once the case was settled, appeal rights were available to each individual investor. (Gov.'s Exhibit 34, Doc. No. 58-3).

Belle's Form 1065 partnership return was ultimately audited by the Internal Revenue Service in Ogden, Utah. On or about June 9, 2005, IRS Ogden sent Metro a letter advising:

> The examination of Belle of Orleans

---

[9] The Government submitted numerous exhibits in connection with its Motion to Dismiss/Motion for Summary Judgment, but with no Affidavit authenticating such exhibits. Government Exhibit 18 purports to be an account summary prepared by IRS agent Jeannette Lynch. Based on the record as it now stands, this exhibit is unauthenticated hearsay.

> partnership ... for the tax periods of 2000
> and 2001 has been completed.
>
> We are pleased to tell you that we have
> completed our review of the item(s) on your
> tax return concerning the partnership/S
> corporation referenced above.  No adjustment
> to your return is necessary at this time,
> since you have claimed no income or loss from
> this partnership.

(Memo Exhibit J, attached to Metro's Opp. Doc. No. 74).

But Metro complains that "[n]either Belle nor Bally's nor the IRS ever advised Metro ... that the IRS Ogden had assigned [Belle's entire 2001 tax loss, $3,342,445] to Bally's, [and Metro was not asked if it agreed to the allocation].  (Metro's Opp. Memo., Doc. No. 74, p. 2).

### *This lawsuit*

On July 25, 2005, Metro filed this lawsuit against the United States, BLI and Belle, seeking judicial review of the findings of the Internal Revenue Service following an audit of the partnership income tax return of Belle for tax year 2001.[10]  Metro's claim for judicial review is asserted under 26 U.S.C. §6226, which is entitled "Judicial review of final partnership administrative adjustments."[11]

---

[10]     Metro added Belle as a defendant in its First Amended Complaint. (Doc. No. 2).

[11]     On March 10, 2006, Norbert A. Simmons filed a Petition with the United States Tax Court, seeking a redetermination of deficiency set forth by the Commissioner of Internal Revenue in the Commissioner's notice of

In its Original Complaint, Metro alleges it "is a Louisiana corporation and effective January 1, 2001, a duly qualified and electing subchapter 'S' corporation, within the meaning of IRC §1371."   (Doc. 1, at ¶ 1).   Metro further alleges that for the year 2001, Belle elected to be taxed under Subtitle "A" of the Internal Revenue Code as a partnership.   (*Id*. at ¶7).

---

deficiency (bearing letter Number 894(cg)-c) dated December 15, 2005.  (*See* Petition filed by Simmons attached as Exhibit I to Gambel Affidavit of June 26, 2006, in support of Metro's Opp., Doc. No. 52).

Metro submits that:

[Simmons'] Tax Court Petition alleges that "petitioner through counsel planned that Metro Riverboat Associates, Inc., a company of which he was the sole shareholder, would be duly qualified and electing S Chapter, and as a majority owner of Belle of Orleans, LLC taxable as a partnership, would generate losses available to it, and available to (Simmons)."  Tax Court petition, para 5(c).  The positions taken by Simmons as Tax Court petitioner are completely consistent [with the position Metro is taking in this litigation].  See Tax Court Petition, para. 5v. ["Metro has been determined to be a duly qualified and electing S Chapter for tax year beginning 1/01/01."]. See Tax Court Petition, para. 5v. ["Metro suffered taxable losses for the tax year ending 12/31/01, to-wit: $7,266,324.27, which said loss flows through and is deductible by petitioner in 12/31/2001, and to the extent not then exhausted is available to petitioner by NOL carryback to t/y/e 12/31/98, 1999, and 2000. Petitioner avails himself of the benefit of those deductions to the extent it is determined that he had net taxable income in such years and interposes those deductions against any deficiency."]

(*See* Metro's Opp., Doc. No. 52, p. 7, and Exhibit I, Simmons' Tax Court Petition).

The Government submits that through his petition filed with the Tax Court, Simmons (Metro's sole shareholder) is raising the same "partnership loss" issues in a non-TEFRA proceeding.  (Gov.'s Memo., Doc. No. 58-1, p. 7).

In the section of its original Complaint entitled "Redetermination of Items," Metro asserts the following:

9.

For tax year 2001, both plaintiff, Metro, and defendant, Ballys (*sic*) of Louisiana, Inc., were with respect to Belle, L.L.C., "persons whose liability under subtitle "A" (was) determined in whole or in part by taking into account" Belle, L.L.C., items within the meaning of IRC 6231.

10.

The United States of America thru (*sic*) the Department of Treasury Internal Revenue Service gave notice to metro of commencement of an examination of the Partnership Return 1065 filed by Belle, L.L.C.

11.

Metro provided notice to the IRS of inconsistent treatment of items on its return of income for 2001 with the treatment of such items by Belle, L.L.C. as required by 6222, together with the statement of understanding referenced.

12.

Metro gave notice to the Department of the Treasury, Internal [R]evenue Service of its desire to participate in the administrative proceeding related to its examination of Belle, L.L.C. items.

13.

Under IRC §6223(a), the tax matter partner is obliged to keep Metro informed of all such proceedings.

12

14.

Neither, the defendant, United States of America, nor defendant, Bally (*sic*) of Louisiana Inc. afforded Metro the opportunity to participate in the proceedings.

15.

The United States IRS has apparently determined that no change to the tax return for Belle, L.L.C. for 2001 was necessary and so advised Metro.

16.

In making said determination, the defendant, the United States of America, concluded "No adjustment to Metro's return was necessary since Metro claimed no income or loss from this partnership" which, given the prior notice and statement of inconsistency was incorrect.

(*See* Original Complaint, Doc. No. 1).

In response to Metro's allegations, BLI and Belle filed a **Motion for Summary Judgment**, arguing that this matter should be dismissed for two reasons: (1) the court does not have jurisdiction unless Metro can establish the jurisdictional prerequisites under IRC §6226;[12] and (2) Metro previously compromised any and all claims and actions (including this suit) it may or might have against BLI and Belle when Metro executed the "Settlement, Transfer and Release Agreement" in February 2003.

---

[12]     The Government filed memoranda in support of Bally's and Belle's Motion for Summary Judgment on this jurisdictional issue.

Metro opposed the Motion for Summary Judgment filed by BLI and Belle, and also sought relief under Federal Rule of Civil Procedure 56(f).   In response to Metro's Rule 56(f) request, the court instructed Metro to submit to the court the nature and extent of discovery, *with specificity*, it seeks to respond to Defendants' Motion for Summary Judgment.   Metro subsequently advised the court that since the filing of its 56(f) motion, the parties exchanged Initial Disclosures and the materials produced by the Government (including a **"Notice of Beginning of Administrative Proceeding"**), *in Metro's view*, were sufficient to permit Metro to more fully plead a jurisdictional basis for its Complaint.  Furthermore, Metro represented that "[n]o further discovery [was] required to address the settlement preclusion issue."  (Doc. No. 25, p. 2).[13]

Metro was granted leave to file a Second Amended Complaint, in

---

[13]     The court did allow Metro to take the deposition of Stephen Schott (who was identified as an attorney who previously represented Bally's Louisiana, Inc. in a prior dispute with, and eventual settlement of claims involving Metro) but only to learn the "[identification of] the Bally's personnel who provided or verified the Belle Tax Return information (for tax year 2001) contained in the Tax Representations" and the identification of whoever made the decision not to notify, or failed to notify Metro, of either (a) the commencement of the IRS' audit or examination  of the Belle of Orleans, L.L.C. partnership return for the tax year 2001; *or* (b) the commencement of any administrative proceeding (including scheduled conferences or other events) related to the IRS' examination or determination of partnership items pertaining to the Belle of Orleans, L.L.C. for the tax year 2001.

The court did <u>not</u> allow Metro to depose Mr. Scott regarding his involvement in prior settlement negotiations between Metro and Bally's/Belle, because (among other reasons) Metro has conceded that no further discovery is required to address the settlement preclusion issue.  (*See* Order, Doc. No. 39).

which Metro adopted and incorporated all allegations contained in its original and first amended complaints, and it added the following paragraphs:

> 1.
>
> On October 26, 2004, Metro filed its United States Federal Income Tax return Form 1120S Amended for 2001, (*sic*) Plaintiff made formal request for administrative adjustment with respect to Belle's return for 2001 on Form 8082 filed as part of the tax return filing. A copy of its Form 8082 is attached hereto as exhibit A.  In filing its return, including Form 8082, for 2001, Plaintiff also formally notified the Internal Revenue Service that it was taking a position inconsistent with the position taken by Defendant Belle of Orleans, L.L.C.[14]
>
> 2.
>
> The administrative adjustment sought by Metro in Form 8082 as aforesaid, related to the allocation of the tax loss reported by Belle of Orleans, L.L.C. for tax year (*sic*) and its 2001 Federal Income Tax Return Form 1065.
>
> 3.
>
> As is made to appear from Exhibit I to the Affidavit of Counsel, Defendant Belle was notified on November 25, 2003, of the commencement of an administrative proceeding for the tax year [] 2001.
>
> 4.

---

[14]    As discussed later in this opinion, Form 8082 is the basis of Metro's alternative argument that it is entitled to judicial review under 26 U.S.C. §6228, entitled "Judicial review where administrative adjustment request is not allowed in full."

As is made to appear from Exhibit II to the Affidavit of Counsel, and the Certified Mail Receipt No. 7000 1670 0010 5766 4817, Belle's obligation to notify Metro of the commencement of the audit was described in the letter to-wit:

5.

Metro received no communication from defendants Ballys and/or Belle respecting the notice of administrative proceeding.

6.

On February 23, 2005, Metro received a No Change" report with respect to its own return for 2001, a copy of which is attached as Exhibit B.

7.

On June 9, 2005, Metro received a "No Change" report with respect to Belle's 2001 return, a copy of which is attached hereto as Exhibit C.

8.

As is made to appear from Exhibit IV to the Affidavit of Counsel given this date, the allocation of the tax loss suffered by Belle in tax year 2001 among its members Ballys and Metro was the subject of the audit.

9.

Metro filed this suit for judicial review of its request for administrative adjustment referenced in paragraph 2 above within 120 days of both No Change it received with respect to its return.

10.

Since no taxes were due on its form, no

16

> deposit was required under Section 636 of the
> United States Internal Revenue Code.

(*See* Second Amended Complaint, Doc. No 44-1).

In their Supplemental Memorandum in Support of Motion for Summary Judgment, BLI and Belle maintain that notwithstanding the additional allegations made by Metro in its Second Amended Complaint, "such additional allegations do not preclude summary judgment based on compromise, settlement, and res judicata." (Supp. Memo., Doc. No. 61-1, p. 2, fn. 3).

In addition to re-urging their argument that the Settlement Agreement (discussed above) completely eliminated any and all obligations they had to Metro, BLI and Belle also argue in their Supplemental Memorandum that "Metro's intentions to fully release [them] from all liability which could result from any action or inaction related to the Operating Agreement (including the [Tax Matter Partner's] designation and performance of duties) can also be found in a separate document ... entitled 'Termination of Operating Agreement of Belle of Orleans, L.L.C.' [which **voided** the Operating Agreement]." (*Id*. at p. 3).

Again, this termination agreement which Metro executed on February 26, 2003 (the same day the Settlement Agreement was executed), provides in pertinent part:

> Metro, Simmons, and BLI each hereby releases
> the other parties to this Termination

> Agreement from any and all obligations, claims, demands, liabilities, costs, losses, expenses, damages, actions, causes of actions, lawsuits, and judgments of any kind, whether known or unknown, contingent or absolute, liquidated or unliquidated, anticipated or unanticipated, asserted or unasserted, in any way relating to or arising out of the Operating Agreement and/or the amendment.

(*See* "Termination of Operating Agreement of Belle of Orleans, L.L.C.," attached as Exhibit A to Declaration of Barry E. Cummins, attached to Doc. No. 61-1).

Further, BLI and Belle still maintain that Metro has failed to sufficiently allege and/or establish that the jurisdictional prerequisites under IRC §6226 have been met. (*Id*. at pp. 7-10).

On June 6, 2006, the United States filed its **Motion to Dismiss for Lack of Jurisdiction and/or for Summary Judgment** arguing that the unified partnership audit and litigation procedures established under the Tax Equity and Fiscal Responsibility Act (TEFRA), 26 U.S.C. §6221-33, under which Metro seeks relief, do not apply to Belle or any of its partners because Belle falls within the "small partnership" exception, and thus Metro cannot avail itself of any relief or remedies provided under TEFRA.

## II.  Legal Analysis

**(A)  Has Metro failed to state a claim for relief under TEFRA?**

The acronym "TEFRA" refers to the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L.No. 97-248, 96 Stat. 324, 648-71. Section 402 of TEFRA enacted the partnership provisions at issue here, Internal Revenue Code (IRC) sections 6221 through 6232. These provisions reflect a Congressional attempt to "improve the auditing and adjustments of income tax items attributable to partnerships." *Alexander v. United States*, 44 F.3d 328, 330 (5th Cir. 1995). TEFRA requires the treatment of all partnership items to be determined at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners. *Id.*; 26 U.S.C. §6221.

Certain definitions are provided in IRC §6231 as follows:

> **(a)  Definition.**  - For purposes of this subchapter-
>
> **(1)  Partnership.**-
>
> **(A)  In general.**- Except as provided in subparagraph (B), the term "partnership" means any partnership required to file a return under section 6031(a).[15]

---

[15]    Section 6031(a) provides in pertinent part:

Every partnership ... shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A ... and shall include the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the

**(B) Exception for small partnerships.-**

> **(I) In general.-**The term "partnership" shall not include any partnership having 10 or fewer partners each of whom is an individual (other than a non-resident alien), a C-corporation, or an estate of a deceased partner....
>
> **(ii) Election to have subchapter apply.** -A partnership (within the meaning of subparagraph (A)) may for any taxable year elect to have clause (I) not apply. Such election shall apply for such taxable year and all subsequent taxable years unless revoked with the consent of the Secretary.
>
> . . .

**(g) Partnership return to be determinative of whether subchapter applies.-**

> **(1) Determination that subchapter applies.-**If, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter applies to such partnership fro such year but such

---

distributive share of each individual.

26 U.S.C. §6031(a).

20

> determination is erroneous, then the
> provisions of this subchapter are hereby
> extended to such partnership (and its
> items) for such taxable year and to
> partners of such partnership.
>
> **(2) Determination that subchapter does
> not apply.-** If, on the basis of a
> partnership return for a taxable year,
> the Secretary reasonably determines that
> this subchapter does not apply to such
> partnership for such year but such
> determination is erroneous, then the
> provisions of this subchapter shall not
> apply to such partnership (and its items)
> for such taxable year or to the partners
> of such partnership.

26 U.S.C. §6231.

In its Motion to Dismiss and/or for Summary Judgment,[16] the Government argues that it examined Belle's partnership return for 2001 and relied on the assertions made therein to make the determination that Belle was a small partnership exempt from the TEFRA provisions.[17]   The Government points out that Belle's 2001

---

[16]   At the outset, the court notes that the Government electronically filed its motion, supporting memorandum, Statement of Material Facts and 31 Exhibits, without providing the court a copy of this massive pleading. Further, the Government's memorandum was cumbersome to read because the Government supported its arguments with citations to Statements of Material Fact, rather than to specific exhibits.  Further, the Statements of Material Fact contained citations to Exhibits, cross references to other Statements of Material Fact, and an inordinate number of footnotes.

[17]   The Government represents that:

> If a partnership falls within the "small partnership"
> exception, the tax treatment of partnership items is
> determined at the individual partner level, rather
> than at the partnership level.  The small partnership

partnership return disclosed that Belle had two partners (Bally's and Metro) both of which were "C corporations," and further the return expressly indicated that Belle was not "subject to the consolidated audit procedures of section 6221 through 6233." (*See* Government's Ex. 4, p. 2, Schedule B Information, line 4).

Metro admits that Metro was shown as a "C Corporation" on Belle's 2001 return, but Metro suggests that that designation is irrelevant because Belle's 2001 return is not controlling.[18]

_____

> exception does not affect the amount of a partner's
> ultimate tax liability; rather, it serves the purpose
> of  determining whether the Commissioner must issue a
> statutory notice of deficiency to the partner, and
> follow the normal deficiency procedures, or instead
> must send a final partnership administrative
> adjustment notice ("FPAA") to the Tax Matters Partner
> of the partnership, and follow the TEFRA consolidated
> partnership procedures, when make (sic) adjustments to
> partnership items.

(*See* Doc. No. 35-2, Gov.'s Memo. at p. 8, footnote with citations omitted)

[18]     Metro argues:

> "A determination made based upon the return is
> conclusive," to quote the United States in its brief
> at p. 4.  But a determination need not be made on the
> basis of the return.  It is just conclusive,
> irrebuttably presumed to be a valid determination of
> the applicability of the rules of IRC 6221 *et seq*.  If
> the determination is not based on the return, the
> determination may not be entitled to the "conclusive"
> presumption of IRC 6231(g)(1), but that is not to say
> that the determination is not the correct one.

(Metro's Opp., Doc. No. 52 at p. 6).

>     Metro then notes that "[i]n such event the standing of the United
> States to challenge the IRS determination may be fairly raise[d], in an
> appropriate case, but it is not raised here, not by these pleadings.  The
> point here is that the United States Motions under 12(b) are pleading
> dependent and must fail, accordingly."  (Metro's Opp., Doc. No. 52 at p. 6, n.
> 3).

Rather, Metro maintains that what is controlling is the IRS'
"Notice of Beginning of the Administrative Proceeding" letter of
November 25, 2003 (form letter 1787(DO))[19] and the IRS'
determination made therein that IRC §6221, *et seq.* (TEFRA) applies.

And although the IRS purportedly voided the "Notice of
Beginning of the Administrative Proceeding" after it determined
that TEFRA was inapplicable (i.e., because of the "small
partnership" exception), Metro maintains that the issuance of the
"Notice of Beginning of the Administrative Proceeding" was actually
correct because Metro had timely applied for "S Status" by March
15, 2001, and Metro was granted "S Status" effective January 1,
2001.[20]

---

[19]     The Government notes that "[w]hile it is true that the IRS issued
a Notice of Beginning of Administrative Proceeding pursuant to TEFRA, the
notice was voided after examination of the partnership return revealed that
Belle was a small partnership exempt from the TEFRA provisions."  See GSMF, at
¶¶33-39."  (Gov.'s Memo. at p. 12, n. 22).

[20]     Again, counsel for Metro explains in his Affidavit attached to
Metro's Opposition to the Government's motion that:

    4.   Metro made a timely election for S Chapter Status effective
         for the tax years beginning January 1, 2001, on March 15,
         2001, as is made to appear from the letter of William C.
         Gambel to Wayne Bacino, Examining Agent, dated March 20th,
         2001, attached as Exhibit D.

    5.   The election was not entered into the IRS ENMOD system until
         March 11, 2002, and entered effective for Tax Years
         beginning January 1, 2002, not 2001, as is shown by copy of
         transaction for ENMOD 72-1236436 run on 9/16/03, which your

In response to this argument, the Government contends that "Metro ignores the fact that Metro was not granted S Corporation status, which was made retroactively effective as of January 1, 2001, until October 22, 2004. The granting of Metro's 'S Corporation' status effective as of January 1, 2001 occurred well after Belle filed its partnership return for 2001 and the IRS began its audit of Belle for 2001." (Gov.'s Memo. in support of its Motion to Dismiss, p. 12, citations omitted).

At this juncture, the court does not decide whether or not Belle was a small partnership exempt from the TEFRA provisions. The procedural posture of this case is unusual and makes such a

---

affiant obtained from Revenue Bacino on or about 9/23/03, attached hereto as Exhibit E.

6.    Upon learning of the error and the belated entry of the S Chapter filing, Metro applied for "Corrective Action under Revenue Procedure 2003-43 and Rev. Proc. 97 48 filed pursuant to Rev. Proc. 2003-43" as is made to appear by the September 24, 2004 letter to the Internal Revenue Service Center in Ogden, Utah, attached hereto as Exhibit F.

7.    On September 24 2004, your affiant asked that the Taxpayer Advocate Office to intercede on Metro's behalf calling to the Advocate's attention the fact that ENMOD 72-1236436, as is made to appear from Exhibit F, the election was not entered into the system until March 11, 2002, and entered effective for Tax Year beginning January 1, 2002, not 2001. See said letter of September 24, 2004, attached hereto as Exhibit G.

8.    By Internal Revenue Service letter dated January 4, 2005, attached hereto as Exhibit H, Metro was notified of [the IRS' acceptance of Metro's] election to be treated as an S Corporation with an accounting period of December 31, [2001], beginning January 1, 2001.

(*See* Affidavit of William C. Gambel and attached Exhibits, attached to Metro's Opposition, Doc. No. 52).

decision difficult because on one hand, Metro's election to be an "S" corporation was purportedly made both before Belle filed its 2001 partnership return (on which Metro is designated as a C corporation) and before Metro filed its original 2001 return on Form 1120-A, "U.S. Corporation Short-Form Income Tax Return" (which presumably is the type of return filed by a C corporation, and not an S corporation).

But on the other hand, the IRS accepted (albeit on January 4, 2005) Metro's election to be treated as a S corporation beginning January 1, 2001.  And there is no competent evidence in the record to establish on what basis the IRS issued the "Notice of Beginning of the Administrative Proceeding" letter of November 25, 2003 (form letter 1787(DO)).  And there is also no competent evidence in the record from which the court can make a determination if, on the basis of [Belle's 2001 return], the Secretary **reasonably** determined that this subchapter applied or did not apply to such partnership for such year.  IRC §6231(g)(1)-(2).[21]

**(B)   Jurisdiction over Metro's IRC §6226 request for judicial**

---

[21]     The Government attached to its motion a "Statement of Material Facts for Motion of United States to Dismiss and/or for Summary Judgment." Under subtitle "IRS Non-TEFRA Audit of Partnership Returns Filed by Belle for 20001 and 2001," the Government provides Statements (Nos. 30-39) some of which are purported to be supported by **Government's Exhibit 18**, which the Government represents is Internal revenue Agent Jeannette Lynch's Activity Record for the Audit of Belle's Returns for 2000 and 2001. Such an exhibit, unsupported by an affidavit addressing both business record and hearsay issues, is not competent summary judgment evidence.

**review?**

Pursuant to IRC §6223, "Notice to partners of proceedings,"

> **(a)** **Secretary must give partners notice of beginning and completion of administrative proceedings.** – The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of –
>
> > (1) the beginning of an administrative proceeding **[NBAP]** at the partnership level with respect to a partnership item, and
> >
> > (2) the final partnership administrative adjustment **[FPAA]** resulting from any such proceeding.
>
> A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

26 U.S.C. §6223(a).

IRC §6226, which provides for "Judicial review of final partnership administrative adjustments," states:

> **(a)** **Petition by tax matters partner.** - Within 90 days after the day on which notice of a final partnership administrative adjustment **[FPAA]** is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable

26

> year with-
>
> (1)  the Tax Court,
>
> (2)  the district court of the
>      United States for the district
>      in which the partnership's
>      principal place of business is
>      located, or
>
> (3)  the Court of Federal Claims.
>
> **(b)  Petition by partner other than tax matters partner.** -
>
> (1)  **In general.** - If the tax
>      matters partner does not file a
>      readjustment petition under
>      subsection (a) with respect to
>      any final partnership
>      administrative adjustment
>      **[FPAA]**, any notice partner (and
>      any 5-percent group) may,
>      within 60 days after the close
>      of the 90-day period set forth
>      in subsection (a), file a
>      petition for a readjustment of
>      the partnership items for the
>      taxable year involved with any
>      of the courts described in
>      subsection (a).

26 U.S.C. §6226.

In this case, Metro seeks under IRC §6226, a "readjustment and judicial review of the items shown on Belle's [partnership] return, and the proper allocation of such items among its members" for the tax year 2001. (*See* Complaint, ¶17).

However, Defendants argue that this court is without jurisdiction unless the IRS issued a FPAA, and Metro has failed to

plead the issuance of a FPAA.  Further, Defendants contend, that given the failure to plead the issuance of a FPAA, Metro's Complaint is deficient in failing to allege facts reflecting that the Complaint was timely filed, i.e, within 150 days of the FPAA as required by IRC §6226 (b)(1).

Indeed, the Government represents, and Metro does not dispute, that "the IRS has not issued a FPAA in this matter."  (*See* Government's 1st Supplemental Memorandum in Support of Motion for Summary Judgment filed by BLI and Belle, Doc. No. 58-1, p. 2).

The Government further represents that the:

> IRS did, mistakenly, issue a NBAP [the letter 1780],[22] but that document was retracted.  But whether the issuance of that document was a mistake is not an issue that this Court needs to visit, since the issuance of a NBAP does nothing toward providing this Court with jurisdiction.

(*Id.*).

Rather, the Government maintains that "[w]ithout issuance of a FPAA, this Court does not have subject matter jurisdiction to consider Metro's claims...."  (*Id.* at 3).

Metro responds that even though there was no issuance of a FPAA, the court should consider that either the "Notice of No Change to Belle's 2001 Return," or alternatively, the IRS' renunciation of the "Notice of Beginning of Administrative

---

[22]     *See* Gov. Ex. 20.

Proceeding" is tantamount to a FPAA in this case. (*See* Metro's Opp. filed August 14, 2006, Doc. No. 74, pp. 9-12).

### No jurisdiction over Metro's request for judicial review under IRC §6226

The court concludes that it does not have jurisdiction over Metro's request for judicial review under IRC §6226, because there was no FPAA issued.[23]  Further, because the court cannot re-write TEFRA to find jurisdiction in this case, the court also rejects Metro's argument that the court should consider that either the "Notice of No Change to Belle's 2001 Return," or alternatively, the IRS' renunciation of the "Notice of Beginning of Administrative Proceeding" is tantamount to a FPAA in this case.

### Has Metro made a claim for judicial review under IRC

---

[23]    The court notes that Treasury Regulation 301.6223(a)-2 provides in part:

> (a) In general.  If the Internal revenue Service, within 45 days after the day on which the notice specified in section 6223(a)(1) is mailed to the tax matters partner, decides not to propose any adjustments to the partnership return as filed, the Internal Revenue Service may withdraw the notice specified in section 6223(a)(1) by mailing a letter to that effect to the tax matters partner within the 45-day period.  **Even if the Internal revenue Service does not withdraw the notice specified in section 6223(a)(1), the Internal Revenue Service is not required to issue a notice of final partnership administrative adjustment....**

Treas. Reg. §301.6223(a)-2. (emphasis added)

29

*§6228?*

Metro alternatively argues that "if there was no administrative proceeding, a final partnership administrative proceeding is unnecessary." (Metro's Opp, filed on August 14, 2006, at p. 13). Metro contends that in that event, it has pled that it filed a Form 8082 with its amended return for 2001, and that form constitutes a partner's request for "administrative adjustment" request under IRC §6227.[24] (*See* Metro's Amended Return

---

[24]    IRC §6227 provides in part:

**Administrative adjustment requests**

(a)    **General rule.**-A partner may file a request for an administrative adjustment of partnership items for any partnership taxable year at any time which is-

(1)    within 3 years after the later of-

(A)    the date on which the partnership return for such year is filed, or

(B)    the last day for filing the partnership return for such year (determined without regard to extensions),

(2)    before the mailing to the tax matters partner of a notice of final partnership administrative adjustment with respect to such taxable year.

. . .

(d)    Other requests.-If any partner files a request for an administrative adjustment (other than a request [by a tax matters partner on behalf of the partnership] described in subsection (c)), the Secretary may-

& Form 8082, attached as Memo Exhibit I to Metro's Opp., Doc. No. 74).

As such, Metro argues that this court has jurisdiction under IRC§ 6228, entitled "Judicial Review where administrative adjustment request is not allowed in full." In this regard, Metro contends that:

> Judicial [r]eview derived from a partner's Form 8082 request under 6228, is narrower in the scope of review [than] under 6226. As noted above, jurisdiction extends to all partnership items for the partnership taxable year" under Code Section 6226(f), whether judicial review is initiated by the Tax Matters partner or another partner. "(T)he review is not limited to the items adjusted in the notice." Treas.Reg.Section 301.6226(f)-1T (In effect for years beginning prior to October 4, 2001). When footed in a partner's request for administrative adjustment,

---

> (1)   process the request in the same manner as a claim for credit or refund with respect to items which are nonpartnership items,
>
> (2)   assess any additional tax that would result from the requested adjustments,
>
> (3)   mail to the partner, under subparagraph (A) of section 6231(b)(1) (relating to items becoming nonpartnership items), a notice that all partnership items of the partner for the partnership taxable year to which such request relates shall be treated as nonpartnership items, or
>
> (4)   conduct a partnership proceeding.

26 U.S.C. §6227.

> however, "a court with which a petition is
> filed in accordance with this subsection shall
> have jurisdiction to determine only those
> partnership items to which the part of the
> request made under section 6227 not allowed
> ... related ..."  Section 6628(a)(5).  The
> distinction is without a difference in this
> case, however.  Metro is content to rest on
> its Form 8082.

(Metro's Opp., Doc. No. 74, at p. 14).

However, the Government argues that although Metro has amended
its Complaint twice, it has never raised "this new theory of
recovery" [i.e., judicial review under IRC §6228] until it filed
its supplemental opposition on August 14, 2006, and Metro's claim
for alternative relief under IRC §6228 should be denied as
untimely. (Gov.'s Supp. Memo., Doc. No. 65-2, p. 2).  Further, the
Government argues that, even if timely, Metro's request for relief
under IRC §6228 should be dismissed because Belle falls within the
"small partnership" exception of IRC §6231(a)(1)(B), and thus Belle
and its partners (including Metro) are exempt for the TEFRA
provisions.  (*Id*. at 2-3).

Further, the Government argues that, even if the Belle was a
TEFRA partnership for 2001 with Metro classified as a "S
Corporation," Metro is not the proper party to seek judicial review
under IRC §6228, because the Administrative Adjustment Request must
be filed by either by the Tax Matters Partner (IRC §6227(c)), or by
Norbert Simmons the sole shareholder of Metro and indirect partner

of Belle. (*Id.* at 3-5). And finally, the Government argues that, even if Metro is allowed to seek judicial review under IRC § 6228, its Form 8082 is deficient as an Administrative Adjustment Request.[25] (*Id.* at 6-7).

The court will not address the parties' arguments related to IRC §6228, because the court finds that Metro has insufficiently pled a claim under IRC §6228. However, the court will allow Metro to again amend its Complaint to allege with specificity that it is seeking judicial review under IRC §6228,[26] and thereafter the Government may elect to file a Motion for Summary Judgment (supported by competent evidence) seeking dismissal of Metro's claim for relief under IRC §6228. Nothing herein should be construed as an indication as how the court will rule if the Government files such a motion.

**(C)  Metro's Claims Against Belle and BLI were extinguished by the**

---

[25]     While Metro has included Form 8082 with its amended return for 2001, (Memo. Exhibit I attached to Doc. No. 74), the Government states that: [a]lthough the IRS transcripts report that Metro filed an amended return on November 5, 2004, the IRS is unable to verify that any Form 8082 was attached to such return. (Gov.'s 2nd Supp. Memo., at p. 5, n. 6).

[26]     Metro argues that it has already pled that it filed a Form 8082 with its amended return for 2001, and that form constituted a partner's request for "administrative adjustment" under IRC §6227. However, the court finds that Metro must more clearly plead (in a third amended complaint) its claim seeking judicial review under IRC §6228.

**Settlement Agreement,**

Metro's complaints are based on the Belle's 2001 tax return and the IRS' "Notice of Beginning of the Administrative Proceeding" letter of November 25, 2003 (form letter 1787(DO)).  The Settlement Agreement was executed by Metro on February 26, 2003.  Metro does not seek to rescind the Agreement, but argues that "Metro did not release Belle, Ballys or any other person from obligations, claims or demands arising out of *future actions*."  (Metro's initial Opp., Doc. No. 15, p. 8).

The court rejects Metro's argument and finds that by executing the Settlement Agreement, Metro clearly compromised any and all claims and actions that it may or might have against BLI and Belle, including those relating to or arising out of the Operating Agreement (including Section 5.08 of the Operating Agreement designating Bally's as the "Tax Matters Partner").  (*See* Settlement Agreement, attached as Exhibit A to the Motion for Summary Judgment, Doc. No. 12, filed by BLI and Belle; & Operating Agreement, Doc. No. 61-3).

Further, the same day that the Settlement Agreement was executed, Metro, Norbert Simmons (the sole shareholder of Metro), and BLI executed the document entitled "Termination of Operating Agreement of Belle of Orleans, L.L.C.," in which the Operating Agreement was terminated in full (which necessarily included

34

termination of Section 5.08 of the Operating Agreement designating Bally's as the "Tax Matters Partner").   Metro, Simmons and BLI released each other from any and all claims, whether known or unknown, anticipated or unanticipated, in any way relating to or arising out of the Operating Agreement.   (*See* Termination of Operating Agreement, attached as Exhibit A to Declaration of Barry E. Cummins, Doc. No. 61-2).[27]

### III.   Conclusion

For reasons set forth above,

**IT IS ORDERED** that the **"Motion for Summary Judgment"** filed by Defendants, Bally's Louisiana, Inc. (BLI) and Belle of Orleans, L.L.C. (Belle), be and is hereby **GRANTED**, for two reasons: (1) the court lacks jurisdiction over Metro's claim for judicial review under IRC §6226 because a Final Partnership Administrative

---

[27]   The court notes that in Metro's opposition to Bally's and Belle's Motion for Leave to File Counterclaim and Third Party Demand, Metro concedes that:

> though Bally's and Belle have been named as "defendants" in these proceedings, they are not true "defendants" in that Metro has not asserted any claims against either of them.   Rather, in accordance with the provisions of §6226(c), they are "treated as a party" to the action, allowed to participate in the proceedings, and subject to the determinations of [the] Court.

(Metro's Opp., Doc. No. 51, at p. 3).

Adjustment (FPAA) was never issued (2) Metro's claims against BLI and Belle were extinguished by the parties' execution of the Settlement Agreement and Termination of Operating Agreement;

**IT IS FURTHER ORDERED** that Metro's claim for judicial review under IRC §6226 be and is hereby **DISMISSED** against all Defendants for lack of jurisdiction;

**IT IS FURTHER ORDERED** that if Metro elects to file a Third Amended Complaint to allege with specificity and clarity a claim for judicial review under IRC §6228, Metro must file a *Motion for Leave to file Third Amended Complaint* by **Tuesday, October 17, 2006**;[28] and

**IT IS FURTHER ORDERED** that the **"Motion to Dismiss and/or for Summary Judgment"** filed by Defendant, the United States of America, who seeks dismissal OF Metro's claims based on the Government's contention that the Belle fall within the "small partnership" exception and thus, Belle and its partners, including Metro, are exempt form the TEFRA provisions, be and are hereby **DENIED** without prejudice to the Government filing another motion for summary judgment (properly supported with competent evidence) if Metro files a Third Amended Complaint alleging a claim for judicial

---

[28]     If Metro files such a *Motion for Leave to File Third Amended Complaint*, Metro is instructed to file the motion as an ex-parte motion for submission to this court, and *not* the magistrate judge.

review under IRC §6228.

   **Finally, if any party hereafter files a motion with supporting memorandum, that party is instructed to provide the court with a courtesy copy of any motion, memorandum and exhibits that are electronically filed.  Further, if the number of exhibits that are filed in connection with a motion exceed 5 in number, they must be tabbed and bound in some fashion.  Finally, if a memorandum is filed in support of a Motion for Summary Judgment, the memorandum should contain citations to the actual exhibits attached to the memorandum, and not citations to Statements of Material Fact or to any other referenced exhibits.**

   New Orleans, Louisiana, this **27th** day of **September**, **2006**.


                              _____
                                    A.J. McNAMARA
                              UNITED STATES DISTRICT JUDGE